1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

JERRY SELBACH,

Petitioner,

v.

J. PALMER, *et al.*,

Respondents.

Case No. 3:10-cv-00541-MMD-VPC

ORDER

This is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in which petitioner, a Nevada state prisoner, is proceeding *pro se* (dkt. no. 5). Now before the Court is respondents' answer to the petition (dkt. no. 9) and a decision on the merits.

**I.      PROCEDURAL HISTORY AND BACKGROUND**

On December 7, 2006, the State charged petitioner with sexual assault. (Exh. 4.)[1] Petitioner pled guilty in exchange for the State's promise not to file additional charges resulting from the arrest for sexual assault. (Exh. 6 at 3.) He was released on bail, then charged with aggravated stalking in relation to a December 21, 2006, incident. (Exh. 11.) Petitioner pled guilty to the second charge, again in exchange for the State's promise not to file any other related charges. (Exh. 13 at 3.) The state district court sentenced petitioner to life imprisonment with the possibility of parole after ten years on the sexual assault charge and a consecutive term of six to fifteen years on the aggravated stalking charge. (Exhs. 15, 16.)

_____

[1]All exhibits referenced in this order are exhibits to respondents' answer (dkt. no. 9) and may be found at dkt. nos. 10-12, 13.

1   Petitioner appealed his convictions, which the Nevada Supreme Court affirmed
2   on May 7, 2007. (Exhs. 17, 19, 32, 34.)

3   Petitioner filed state postconviction petitions for a writ of habeas corpus for each
4   of the two criminal cases. (Exhs. 40, 41.) The state district court denied both petitions
5   on December 2, 2009. (Exhs. 75, 76.) The Nevada Supreme Court consolidated the
6   appeals and affirmed the denial of the state postconviction petitions on June 9, 2010.
7   (Exhs. 91, 109.)

8   Petitioner dispatched this federal petition for writ of habeas corpus on August 30,
9   2010, raising three grounds for relief (dkt. no. 5). Respondents have answered the
10  petition and argue that it should be denied on the merits (dkt. no. 9).

11  **II.   LEGAL STANDARDS**

12  **A.   Antiterrorism and Effective Death Penalty Act**

13  28 U.S.C. § 2254(d), a provision of the Antiterrorism and Effective Death Penalty
14  Act (AEDPA), provides the legal standards for this Court's consideration of the petition
15  in this case:

16  An application for a writ of habeas corpus on behalf of a person in
    custody pursuant to the judgment of a State court shall not be granted with
17  respect to any claim that was adjudicated on the merits in State court
    proceedings unless the adjudication of the claim —

18  (1)   resulted in a decision that was contrary to, or involved an
    unreasonable application of, clearly established Federal law, as
19  determined by the Supreme Court of the United States; or

20  (2)   resulted in a decision that was based on an unreasonable
    determination of the facts in light of the evidence presented in the State
21  court proceeding.

22  28 U.S.C. § 2254(d).

23  The AEDPA "modified a federal habeas court's role in reviewing state prisoner
24  applications in order to prevent federal habeas 'retrials' and to ensure that state-court
25  convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S.
26  685, 693-694 (2002). A state court decision is contrary to clearly established Supreme
27  Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a
28  rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the

state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade,* 538 U.S. 63, 73 (2003) (quoting *Williams,* 529 U.S. 362, 405-406 (2000) and citing *Bell,* 535 U.S. at 694). This Court's ability to grant a writ is limited to cases where "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 786 (2011).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Andrade*, 538 U.S. 63 (quoting *Williams*, 529 U.S. at 405-06; citing *Bell*, 535 U.S. at 694.

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Andrade*, 538 U.S. at 74 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

In determining whether a state court decision is contrary to federal law, this Court looks to the state courts' last reasoned decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000). Further, "a determination of a factual issue made by a state court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

**B.**     **Ineffective Assistance of Counsel**

Ineffective assistance of counsel claims are governed by the two-part test announced in *Strickland v. Washington,* 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that a petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1) the attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment, and (2) that the deficient performance prejudiced the defense. *Williams,* 529 U.S. at 390-91 (citing *Strickland,* 466 U.S. at 687). To establish ineffectiveness, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id.* To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is "probability sufficient to undermine confidence in the outcome." *Id.* Additionally, any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the distorting effects of hindsight. *Strickland,* 466 U.S. at 689. It is the petitioner's burden to overcome the presumption that counsel's actions might be considered sound trial strategy. *Id.*

Ineffective assistance of counsel under *Strickland* requires a showing of deficient performance of counsel resulting in prejudice, "with performance being measured against an objective standard of reasonableness . . . under prevailing professional norms." *Rompilla v. Beard,* 545 U.S. 374, 380 (2005) (internal quotation marks and citations omitted). When the ineffective assistance of counsel claim is based on a challenge to a guilty plea, the *Strickland* prejudice prong requires a petitioner to demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

If the state court has already rejected an ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary to, or an unreasonable

4

1    application of, the *Strickland* standard. *See Yarborough v. Gentry,* 540 U.S. 1, 5 (2003).

2    There is a strong presumption that counsel's conduct falls within the wide range of

3    reasonable professional assistance. *Id.*

4          The United States Supreme Court has described federal review of a state

5    supreme court's decision on a claim of ineffective assistance of counsel as "doubly

6    deferential." *Cullen v. Pinholster*, 131 S.Ct. 1388, 1403 (2011) (quoting *Knowles v.*

7    *Mirzayance*, 129 S.Ct. 1411, 1413 (2009)). The Supreme Court emphasized that: "We

8    take a 'highly deferential' look at counsel's performance. . . . through the 'deferential

9    lens of § 2254(d).'" *Id.* at 1403 (internal citations omitted). Moreover, federal habeas

10   review of an ineffective assistance of counsel claim is limited to the record before the

11   state court that adjudicated the claim on the merits. *Cullen*, 131 S.Ct. at 1398-1401. The

12   United States Supreme Court has specifically reaffirmed the extensive deference owed

13   to a state court's decision regarding claims of ineffective assistance of counsel:

14          Establishing that a state court's application of *Strickland* was
       unreasonable under § 2254(d) is all the more difficult. The standards
15     created by *Strickland* and § 2254(d) are both "highly deferential," *id.* at
       689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S.Ct.
16     2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review
       is "doubly" so, *Knowles*, 556 U.S. at ———, 129 S.Ct. at 1420. The
17     *Strickland* standard is a general one, so the range of reasonable
       applications is substantial. 556 U.S. at ———, 129 S.Ct. at 1420. Federal
18     habeas courts must guard against the danger of equating
       unreasonableness under *Strickland* with unreasonableness under §
19     2254(d). When § 2254(d) applies, the question is whether there is any
       reasonable argument that counsel satisfied *Strickland's* deferential
20     standard.

21   *Harrington*, 131 S.Ct. at 788. "A court considering a claim of ineffective assistance of

22   counsel must apply a 'strong presumption' that counsel's representation was within the

23   'wide range' of reasonable professional assistance." *Id.* at 787 (quoting *Strickland*, 466

24   U.S. at 689). "The question is whether an attorney's representation amounted to

25   incompetence under prevailing professional norms, not whether it deviated from best

26   practices or most common custom." *Id.* (internal quotations and citations omitted).

27   ///

28   ///

5

III.     **INSTANT PETITION**

     A.      **Ground 1**

       Petitioner alleges that the state district court abused its discretion when it did not find that his trial counsel rendered ineffective assistance in violation of his Sixth and Fourteenth Amendment rights (dkt. no. 5 at 3). He claims that had counsel investigated the victim and her mother he would have discovered that the victim suffered from mental illness, never told the authorities or medical personnel that she was raped, and was motivated to lie because social services threatened to take their minor child away from them. *Id.*

       Where the ineffective assistance claim relates to counsel's failure to investigate a potential defense, the proper inquiry is whether "discovery of the evidence would have led counsel to change his [or her] recommendation as to the plea." *Lambert v. Blodgett*, 393 F.3d 943, 982 (9ᵗʰ Cir. 2004), citing *Hill*, 474 U.S. at 59.

       Respondents argue that ground 1 lacks merit as it is based on testimony provided by petitioner, the victim, and her mother at the state postconviction evidentiary hearing that the court found to be completely incredible (dkt. no. 9 at. 6-9; dkt. no. 5 at 3).

       At the evidentiary hearing on the state postconviction petitions, the victim testified that she had lied under oath when she stated she was "beat[sic] and raped and mentally tortured" in her victim impact statement (Exh. 69 at 8-10); she had lied to the police about being raped (*id.* at 11); she had lied to the court about fearing for her life (*id.* at 16-17); and she testified that petitioner had not caused her back to bleed by hitting her with a cell phone charger, though she could not explain how she was hit in the back with the charger (*id.* at 29-30).[2]

_____

[2]The Court notes the following exchange between the court and the victim, which typifies the victim's testimony at the evidentiary hearing:
    Q:     Did you tell anybody from the hospital that you went to that you were sexually assaulted?
    A:     No.
    Q:     Did you tell anybody at the hospital that you had been beaten?
*(fn. cont...)*

6

In the state district court's order denying the state petition, the court explained:

> The primary claim was that trial counsel rendered ineffective assistance of counsel in failing to adequately investigate the various charges. The theory is that if he had only asked he would have learned that the police reports and medical reports were all fabricated and that the victim . . . never was sexually assaulted and never claimed to have been sexually assaulted or to have been the subject of force and violence in connection with that sexual assault. That claim was based primarily on the testimony of [the victim], her mother . . . and by the petitioner. At the outset, the court finds that the testimony of those three witnesses was the least credible testimony this court has ever observed. It was clear that the three had collaborated on an outline of the story but when questioned on specifics they were inconsistent internally and with each other and with their own prior statements and even with their own affidavits appended to the petitions for writs of habeas corpus. The court has considered the demeanor of those three witnesses, as well as their nonsensical descriptions of things that are just physically impossible, and has determined that the three of them are simply not worthy of belief.

(Exh. 75 at 2-3.)

While petitioner's counsel testified at the evidentiary hearing that he never spoke with the victim, the victim testified at that hearing that if she had talked to petitioner's trial counsel, she would have told him the same thing she told the court during her impact statement: that she was violently raped by petitioner. (Exh. 69 at 54-55.)

Petitioner's trial counsel testified that he and petitioner "went over the police reports together and then I asked him directly about whether they were truthful and accurate and he asserted that they were." (*Id.* at 214.) Counsel testified that at the time they reviewed the police reports petitioner suggested that counsel find out whether the State was interested in negotiating a plea deal. (*Id.* at 222.) Counsel felt that the plea deal — in which petitioner would plead guilty to one count of sexual assault in exchange

---

*(...fn. cont.)*

    A:    No.
    Q:    Did you tell — by the way, did you tell — I think you mentioned earlier that you did not tell [your best friend] that you had been raped. Right?
    A:    No, I didn't.
    Q:    And you didn't tell your mother you had been raped. Right?
    A:    No. I hadn't been.
    Q:    But the next day everyone has the same story, all the cops, doctors, and you had never told anybody that story.
    A:    Right.
(Exh. 69 at 101-102.)

for a second count of sexual assault being dropped — was "advantageous." (*Id.*) He testified that "I felt the evidence was overwhelming that, if we had gone to trial, he would be convicted of both counts of sexual assault." (*Id.*)

The victim's mother testified at the evidentiary hearing that if petitioner's counsel had talked to her at the time, she would have told him that her daughter never told her that petitioner had sexually assaulted her. (*Id.* at 147.) Counsel testified that he did not interview the victim's mother because the victim "was a grown woman" and that he had no information at the time that would have led him to believe there was any reason to talk to her mother. (*Id.* at 216.)

The state district court explained its finding that counsel had no reason to launch any additional investigation:

> As noted in *Strickland v. Washington*, 466 U.S. 668, 669, 104 S.Ct. 2052, 2066 (1984), "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant." [Petitioner's counsel] testified credibly that he and his client reviewed the police reports including the victim's allegations and the defendant's confessions, and the defendant disputed none of it. In other words, [counsel] had no reason to believe that the victim would claim that the crimes never happened. In fact, the victim testified that if [counsel] had asked her at the time, she would have confirmed the sexual assault by force and violence, as well as the aggravated stalking.

> One who would assert ineffective assistance of counsel must bear not only the burden of pleading, but the burden of persuading this trier of fact that the specific decisions or actions of counsel fell below an objective standard of reasonableness and that but for the failings of counsel the defendant would have insisted on standing trial. *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366 (1985); *Kirksey v. State*, 112 Nev. 980, 923 P.2d 1102 (1996). At the close of the hearing, after considering all the evidence, this trier-of-fact was not persuaded that counsel had acted unreasonably or that [petitioner] would have insisted on trial.

*(Id.* at 3.)

The Nevada Supreme Court affirmed the denial of the ineffective assistance claims, determining, without discussion, that substantial evidence supported the state district court's findings and that the findings were not clearly wrong. (Exh. 109 at 2.) Thus, the state district court's ruling is the last reasoned decision on the ineffective

assistance claims now presented in the federal petition. The state district court's factual findings are entitled to a presumption of correctness. 28 U.S.C. §2254(e)(1).

This Court has carefully reviewed the record and concludes that it provides extensive support for the state district court's credibility determinations. Petitioner has not demonstrated that his counsel's advice that he plead guilty fell outside the wide range of reasonable professional assistance required by *Strickland* or that not investigating the victim or her mother was unreasonably deficient representation and that such deficient performance prejudiced petitioner. Petitioner has, therefore, failed to demonstrate that the state district court's decision is contrary to, or involves an unreasonable application of, clearly established federal law, as determined by the U.S. Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Accordingly, ground 1 lacks merit and is denied.

**B.    Ground 2**

Petitioner claims that the state district court abused its discretion by not finding that his counsel rendered ineffective assistance in violation of his Sixth and Fourteenth Amendment rights when he did not provide a psychosexual evaluation at sentencing (dkt. no. 5 at 6-7).

Respondents argue that petitioner has failed to meet his burden of showing that there is no reasonable argument that his counsel provided effective assistance under *Strickland* when he did not present a psychosexual evaluation at sentencing (dkt. no. 9 at 9).

Petitioner's counsel testified at the evidentiary hearing that he did not recall whether a psychosexual evaluation was or was not completed in petitioner's case. (Exh. 69 at 217.) He stated that his office did not always have such evaluations completed if probation was not available and that he frequently arranges for such reports but often does not file the evaluation if the recommendation is not good, is marginal, or can be interpreted as negative. (*Id.* at 217-218.)

1    A psychologist who conducted a psychosexual evaluation of petitioner in

2    connection with his postconviction petitions also testified at the evidentiary hearing.

3    (Exh. 69 at 150.) She testified that in her opinion petitioner poses a low to moderate risk

4    of sexual re-offense. (*Id.* at 154.) She stated that a low to moderate risk offender is

5    usually amenable to treatment and can be safely treated and managed in the

6    community. (*Id.* at 156.) She also testified that some factors raised concern for her in

7    this case about whether petitioner would be amenable to treatment, such as that he was

8    not always forthcoming during the evaluation; that he violated the temporary protective

9    order against him the day after he pleaded guilty to the sexual assault; that he did not

10   comply with a court order directing him to start drug court; as well as his long-term

11   alcohol and methamphetamine abuse and lack of stable employment history. (*Id.* at

12   156-157.)

13       With respect to this claim, the state district court held:

14       Another claim was that counsel was ineffective at sentencing in failing to
         adduce additional mitigating evidence. The only additional evidence
15       presented was the report and testimony of [the psychologist]. The court
         first notes that it has not been proved to the satisfaction of the court that
16       [counsel] did not make a reasonable investigation. Counsel could not
         recall if he arranged for a psycho-sexual evaluation and declined to
17       present it, or if he decided not to seek such an evaluation because it was
         not required as probation was not an option. The petition [sic] bears the
18       burden of disproving the presumption that counsel made reasonable
         tactical decisions. *State v. LaPena*, 114 Nev. 1159, 686 P.2d 750, 754
19       (1998) ("a defendant must overcome the presumption that a challenged
         action might be considered sound strategy."). [Petitioner] failed to prove by
20       a preponderance of the evidence that [counsel] did or did not arrange for
         an evaluation and so the court finds that [petitioner] has failed to meet his
21       burden of proving that counsel did not investigate.

22       The court notes that [the psychologist] was correct in that any reasonable
         jurist would find such a comprehensive report helpful in fixing sentence.
23       That is not to say that counsel has an absolute duty to obtain such a
         report in every case. This court remains unpersuaded that some objective
24       standard required [counsel] to obtain or present a psycho-sexual
         evaluation in this case. On the subject of prejudice, while the court might
25       have found [the psychologist's] report helpful, the court does not find the
         evidence would have altered the outcome of the sentencing hearing.
26

27   (Exh. 75 at 3-4.)

28   ///

10

First, as the state district court discussed, no evidence was presented at the evidentiary hearing to demonstrate that petitioner's trial counsel did or did not arrange for a psychosexual evaluation. Moreover, the Court agrees with respondents that the psychologist's testimony did not suggest that such an evaluation would have had any significant mitigating effect. She testified that she concluded that petitioner was a low to moderate risk to sexually re-offend, but she also testified to concerns she had about his lack of candor, failure to comply with previous court orders, drug and alcohol abuse, and lack of stable employment history. (Exh. 69 at 156-157.) Respondents also point out that petitioner's trial counsel argued at sentencing for concurrent sentences, citing petitioner's age and chronic substance abuse and noting that petitioner's supportive parents were present at sentencing. (Exh. 14 at 13-14.)

Again, the state district court's factual findings are entitled to a presumption of correctness. 28 U.S.C. §2254(e)(1). Petitioner failed to demonstrate whether his counsel had a psychosexual evaluation completed. He has further failed to demonstrate that counsel was unreasonably deficient when he did not present a psychosexual evaluation at sentencing and that such deficient performance prejudiced petitioner. Petitioner has failed to meet his burden of proving that the state district court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the U.S. Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Accordingly, ground 2 is denied.

### C.    Ground 3

Petitioner claims that the district court abused its discretion when it failed to appoint a psychologist to evaluate the victim because she had long-standing mental illness in violation of his Fifth and Fourteenth Amendment due process rights (dkt. no. 5 at 9).

///

///

11

1    In affirming the denial of this claim, the Nevada Supreme Court held:

2        [petitioner] contends that the district court abused its discretion by
3    denying his request to continue the evidentiary hearing in order to have
     one of his witnesses, the victim, evaluated by a mental health professional
4    after she testified. In denying the request, the district court stated that the
     witness' "credibility is zero" and that a psychological evaluation was not
5    "pertinent." Additionally, NRS 34.780(2) provides, in part, that a party in a
     post-conviction proceeding "may invoke any method of discovery available
6    under the Nevada Rules of Civil Procedure." No civil rule, however, vests
     a district court with discretion to grant a continuance and order the
7    psychological evaluation of a non-party witness. *See* NRCP 35(a).
     Therefore, we conclude that the district court did not abuse its discretion.

8    (Exh. 109 at 2-3.)

9        Petitioner did not request an evaluation of the victim until his November 2009

10   evidentiary hearing on his state postconviction petition. (*Id.*) The Ninth Circuit has held

11   that a claim of error in state postconviction proceedings is not cognizable in federal

12   habeas proceedings. *Gerlaugh v. Stewart*, 129 F.3d 1027, 1045 (9th Cir. 1997) (citing

13   *Franzen v. Brinkman*, 877 F.2d 26 (9th Cir. 1989). The Court agrees with respondents

14   that even assuming, *arguendo*, that the state district court's refusal to appoint a

15   psychologist was error, such error is not cognizable in a federal habeas proceeding.

16   Accordingly, ground 3 is denied.

17       The petition is thus denied in its entirety.

18   **IV.    CERTIFICATE OF APPEALABILITY**

19       In order to proceed with an appeal, petitioner must receive a certificate of

20   appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v.*

21   *Ornoski,* 435 F.3d 946, 950-51 (9th Cir. 2006); s*ee also United States v. Mikels*, 236

22   F.3d 550, 551-52 (9th Cir. 2001). Generally, a petitioner must make "a substantial

23   showing of the denial of a constitutional right" to warrant a certificate of appealability.

24   *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). "The

25   petitioner must demonstrate that reasonable jurists would find the district court's

26   assessment of the constitutional claims debatable or wrong." *Id.* (quoting *Slack*, 529

27   U.S. at 484). In order to meet this threshold inquiry, the petitioner has the burden of

28   demonstrating that the issues are debatable among jurists of reason; that a court could

resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *Id.* This Court has considered the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appealability, and determines that none meet that standard. The Court will therefore deny petitioner a certificate of appealability.

## V.    CONCLUSION

It is therefore ordered that the petition for a writ of habeas corpus (dkt. no. 5) is denied in its entirety.

It is further ordered that the Clerk of Court shall enter judgment accordingly and close this case.

It is further ordered that petitioner is denied a certificate of appealability.

DATED THIS 27th day of March 2015.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE